UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DOUGLAS GROSS,

                                Plaintiff,

                                                                          <ins>DECISION AND ORDER</ins>

                                                                          04-CV-6542L

                              v.

LINDA S. MCMAHON, Acting
Commissioner of Social Security,[1]

                                Defendant.
_____

**INTRODUCTION**

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of the Social Security Administration ("the Commissioner") that Douglas Gross ("plaintiff") is not disabled, and, therefore, is not entitled to benefits under the Social Security Act ("the Act"). Plaintiff applied for disability insurance benefits on July 16, 2001, alleging a disability onset date of December 20, 1997. (T. 178).[2] Plaintiff asserted that he was

---

[1] Plaintiff's complaint names former Commissioner of Social Security Joanne B. Barnhart as the defendant. Linda S. McMahon, the current Acting Commissioner, automatically is substituted as the defendant pursuant to Fed. R. Civ. P. 25(d)(1).

[2] "T. __" refers to the page of the administrative transcript filed by the Commissioner.

unable to work due to a number of problems, including depression, a history of substance abuse, knee and back pain, and visual problems.

Plaintiff's application was denied initially. (T. 111). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on October 30, 2002. (T. 33-55). On January 23, 2003, the ALJ issued a decision finding that plaintiff was not disabled because he was able to perform substantially all of the requirements of light work. (T. 105).

Plaintiff then requested review of the ALJ's decision by the Appeals Council, which granted his request and vacated the ALJ's decision on April 10, 2003. (T. 138). The Appeals Council remanded for further proceedings, including taking evidence from a vocational expert and evaluation of plaintiff's subjective complaints in accordance with Social Security Ruling ("SSR") 96-7p. (T. 140-42).

A second hearing was held on December 3, 2003, at which time plaintiff amended his alleged onset date to July 16, 2001. (T. 52). On December 20, 2003, the ALJ again denied plaintiff's claim. (T. 16). The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on September 2, 2004. (T. 7).

Plaintiff then commenced this action, seeking review of the Commissioner's decision. Both plaintiff and the Commissioner have moved for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). For the reasons given below, plaintiff's motion is granted, the Commissioner's motion is denied, and the case is remanded for further proceedings.

**DISCUSSION**

**I. Legal Standards and Scope of Review**

When reviewing the Commissioner's final decision under 42 U.S.C. 405(g), the court "must determine whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) (citation omitted). It does not determine *de novo* whether a claimant is disabled. *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000) (citation omitted). Although the Commissioner is ultimately responsible for determining a claimant's eligibility, the actual disability determination is made by an ALJ, and that decision is subject to judicial review on appeal. A court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if that decision appears to be supported by substantial evidence. *See Pollard v. Halter*, 377 F.3d 183, 188-89 (2d Cir. 2004) (citation omitted); *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987). "Failure to apply the correct legal standards is grounds for reversal." *Pollard*, 377 F.3d at 189 (internal quotation marks and citation omitted).

A court's factual review of the Commissioner's decision is limited to the determination of whether substantial evidence in the record supports the decision. *See* 42 U.S.C. § 405(g); *see also Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence ... means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (internal quotation marks omitted). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Williams ex rel. Williams v. Bowen*,

859 F.2d 255, 258 (2d Cir. 1988) (citations omitted).  An ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision.  *See Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams*, 859 F.2d at 258 (citations omitted).  However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision.  *See* 42 U.S.C. § 405(g); *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

The court has the authority to affirm, reverse, or modify a final decision of the Commissioner with or without remand.  42 U.S.C. § 405(g); *Butts*, 388 F.3d at 385.  Remand is warranted where there are gaps in the record and further development of the evidence is needed, or where the ALJ has applied an improper legal standard.  *See Butts*, 388 F.3d at 385; *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999); *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980).  Remand is particularly appropriate where further findings or explanation will clarify the rationale for the ALJ's decision.  *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996) (citation omitted).  By contrast, reversal and remand solely for calculation of benefits is appropriate when there is "persuasive proof of disability" and further development of the record would not serve any purpose.  *Rosa*, 168 F.3d at 83; *Parker*, 626 F.2d at 235; *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 644 (2d Cir. 1983) (reversal without remand for additional evidence particularly appropriate where payment of benefits already delayed for four years and

remand would likely result in further lengthening the "painfully slow process" of determining disability). However, absent sufficient evidence of disability, delay alone is not a valid basis for remand solely for calculation of benefits. *See Bush v. Shalala*, 94 F.3d 40, 46 (2d Cir. 1996) (citation omitted).

**II. ALJ's Rejection of Plaintiff's Claim of Illiteracy**

At the second hearing, plaintiff testified that he had gotten as far as the "[n]inth or eighth" grade in school. (T. 53). Discussing his pain medication, plaintiff stated that his girlfriend would put some sort of identifying marks on his pill bottles so that plaintiff would "know what they are because of [his] lack of reading." (T. 58). The ALJ then asked plaintiff if he could read, to which plaintiff replied, "No sir. ... I can't read." (T. 58).

Plaintiff's attorney was then permitted to examine plaintiff. When she asked him, "[W]ere you ever able to read, Mr. Gross?," plaintiff replied, "No." (T. 62). Plaintiff went on to say that he was not able to write, other than his name, and that his girlfriend or other persons had always filled out applications or other paperwork for him. (T. 62).

The vocational expert ("VE") then testified. The ALJ asked the VE three hypothetical questions. In response to the first two, which were based on some of the medical evidence concerning plaintiff's limitations, the VE testified that there were jobs in the national economy and in the Finger Lakes region that the person in the hypotheticals could perform. Specifically, the VE identified the following jobs: order clerk, food and beverage industry; addresser; cutter and paster, press clippings; and ticket taker. (T. at 80-83). In response to the third hypothetical, which was based solely on plaintiff's testimony, the VE testified that there were no jobs that the

hypothetical person in the question could perform, because of the physical limitations set forth in the question. (T. 83).

Plaintiff's attorney then examined the VE. She asked him whether "the inability to read and write [would] eliminate any of those jobs" that the VE had identified in response to the first two hypotheticals. (T. 85). The VE asked, "The person is functionally illiterate?" The attorney responded, "Yes," and the VE stated, "Could not do those jobs." *Id.* He explained that all of those jobs would require some ability to read. (T. 85-86).

The ALJ then asked the VE whether any of plaintiff's past relevant work required an ability to read or write. The VE responded that plaintiff's prior jobs as a mechanic, truck driver, equipment repairer, and forklift operator would all require some ability to read. (T. 86-87).[3]

Plaintiff was then re-examined by his attorney. He testified that "[t]hey didn't give [him] anything to read" in his equipment repairer job. He said that his supervisor "knew [plaintiff] was illiterate and he pointed out to [plaintiff] what to do and how to do it." (T. 88). Plaintiff stated that he eventually got laid off when his supervisor moved to a different position and "he could no longer cover for" plaintiff. *Id.*

Plaintiff also testified with respect to his truck driver job that he "got [his driver's] license when [he] was 15 years old and [he] didn't take ... the written test." *Id.* He stated that he mostly drove in Miami, where the streets are numbered, so there were "no names [he] had to

---

[3]The VE stated that one of plaintiff's prior jobs, floor cleaner, would not require any degree of literacy (T. 86), but it appears that plaintiff's physical limitations as found by the ALJ would preclude him from performing that job today. *See* T. 79 (describing physical demands of floor cleaner job).

read." (T. 89). He said that if he had to drive out of town, his girlfriend would go with him, and read the street signs for him. (T. 89-90).

The ALJ then asked plaintiff, "Mr. Gross, you say you can't read ... at all or you read ... at a certain level?" Plaintiff replied, "I can read the and [sic] I know a street when I see it, but I can't read, sit down and read a paper, a page in a book. No, I can't do that. I can't sit there and draw out a map." (T. 90).

In his December 20, 2003 decision, the ALJ stated that plaintiff "testified to not being able to read or write but this is in contradiction to his testimony at the first hearing where he said he could read at the third grade level." (T. 20-21). Regarding plaintiff's testimony about having his girlfriend accompany him on job trips outside Miami, the ALJ stated, "This is somewhat absurd and the Administrative Law Judge doubts that any company would allow a non-employee in their trucks, at the least because of insurance reasons." (T. 21). The ALJ added that even if the streets in Miami were mostly numbered, as plaintiff testified, "[t]his would still require the ability to read numbers." *Id.* In a similar vein, the ALJ stated later in his decision that plaintiff "incredibly testified that he did not have to read [in his prior jobs] or, in the case of the truck driver job, took his girlfriend with him to Florida as discussed above." (T. 23).

In his findings, the ALJ found that plaintiff had the residual functional capacity ("RFC") to perform a significant range of light work. (T. 24). The ALJ also found that plaintiff has a "limited education," which the regulations define as "ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs," generally equivalent to a 7th- through 11th-grade formal education. 20 C.F.R. § 404.1564(b)(3). He stated that

although plaintiff's exertional limitations did not allow him to perform the full range of light work, nevertheless, using the Medical-Vocational Guidelines as a framework for decisionmaking, there were a significant number of jobs in the national economy that plaintiff could perform, including order clerk - food/beverage, addresser of small packages, and cutter/paster.  (T. 25).

The applicable regulations define illiteracy as "the inability to read or write." 20 C.F.R. § 404.1564(b)(1).  A claimant is considered illiterate "if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name." *Id.*  "Generally, an illiterate person has had little or no formal schooling," *id.*, but "the Social Security Administration 'recognizes that even someone with formal schooling may be deemed illiterate.'" *Diehl v. Barnhart*, 357 F.Supp.2d 804, 824 (E.D.Pa. 2005) (quoting *Frontanez-Rubiani v. Barnhart*, No. Civ.A.03-1514, 2004 WL 2399821, at *5 (E.D.Pa. Sept. 30, 2004)); *see* 20 C.F.R. § 416.964(b) ("the numerical grade level that you completed in school may not represent your actual educational abilities.  These may be higher or lower"); *Muncy v. Apfel*, 247 F.3d 728, 730-31 (8th Cir. 2001) (plaintiff was "functionally illiterate, although he finished tenth grade in special education classes"); *Cole v. Apfel*, No. 98 C 6735, 2000 WL 290432, at *4 (N.D.Ill. Mar. 17, 2000) ("The fact that [plaintiff] had a seventh grade education is not dispositive by any means" of the question of whether he was literate).

In the case at bar, the ALJ based his rejection of plaintiff's claim of illiteracy, and his finding that plaintiff has a "limited education," in part on plaintiff's testimony at the first hearing that he can "read at about a third grade level."  (T. 21, 38).  The ALJ also stated that he found

"absurd" plaintiff's testimony that his girlfriend accompanied him on trips when plaintiff was working as a truck driver, and would read road and street signs for him. (T. 21).

Although for the "purpose of identifying a class of workers with negligible employment opportunities, the standard for literacy has been pitched quite low," and "the question is only whether the [plaintiff] is so deficient in ability to read and write that he cannot obtain even an unskilled job," *Glenn v. Secretary of Health and Human Services*, 814 F.2d 387, 391 (7th Cir. 1987), in my view the ALJ's finding is not supported by substantial evidence. For one thing, although plaintiff did state at the first hearing that he read at about a third grade level, he did not state what he based that on, whether he had been tested, whether he had been told that by someone else, or whether that was simply his own estimate or guess.

Second, while I realize that the credibility of a claimant's testimony is for the ALJ to decide in the first instance, *see Starks v. Bowen*, 873 F.2d 187, 190 (8th Cir. 1989), and that "[t]he consistency of the individual's own statements" is one factor that the ALJ may properly consider in making credibility determinations, *see* SSR 96-7p, the apparent contradiction in plaintiff's testimony is not enough of a basis, by itself, for the ALJ to have rejected plaintiff's testimony that he cannot read. As stated, it is not apparent where plaintiff came up with the "third grade level" assessment.

Furthermore, even assuming that plaintiff had some basis for that statement, a third-grade reading level is so low that it calls into question whether plaintiff is functionally illiterate, particularly in light of plaintiff's other testimony that he had been placed in special education classes. *See Wolfe v. Chater*, 86 F.3d 1072, 1076-77 (11th Cir. 1996) (stating, where VE testified that plaintiff read at below third grade level, that there was insufficient evidence to support any

classification of plaintiff's educational level, and remanding for further findings of fact on whether plaintiff was illiterate); *Skinner v. Secretary of H.H.S.*, 902 F.2d 447, 450 (6th Cir. 1990) ("The record is replete with evidence that Mr. Skinner is illiterate.  Mr. Skinner's [test] results indicate that he reads below the third grade level"); *Diehl*, 357 F.Supp.2d at 823-24 (where psychologist testified that plaintiff read at a third grade level and spelled at a second grade level, and plaintiff testified that he was placed in special education classes at school, court concluded that "record [wa]s lacking in evidence to support a finding one way or the other as to Plaintiff's literacy"); *Cole*, 2000 WL 290432, at *4 (stating that plaintiff had "below a third grade reading capacity, but it is difficult to ascertain, without more, whether that level surpasses the threshold set by the regulations").

Equally troubling is the way in which the ALJ simply dismissed as "absurd" plaintiff's allegations about how he had been able to hold down his prior jobs despite being unable to read. The ALJ expressed skepticism that plaintiff's employer would have allowed his girlfriend to accompany him on out-of-town trips, but plaintiff did not testify that his employer was aware that he took his girlfriend with him.  In addition, plaintiff's testimony that his supervisors or others accommodated his illiteracy does not appear so incredible that it could simply be dismissed out of hand.

It is well established that the ALJ has a "duty to investigate the facts and develop the arguments both for and against granting benefits ... ." *Sims v. Apfel*, 530 U.S. 103, 111 (2000); *see also Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) ("the ALJ generally has an affirmative obligation to develop the administrative record"); *Dixon v. Heckler*, 811 F.2d 506, 510 (10th Cir. 1987) ("a Social Security disability hearing is a nonadversarial proceeding, in which the ALJ has

a basic duty of inquiry, 'to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts'") (citing *Heckler v. Campbell*, 461 U.S. 458, 471 n. 1 (1983) (Brennan, J., concurring)).  The ALJ failed to do so here.

That this was a crucial area of inquiry was made plain by the VE's testimony.  In response to the ALJ's hypotheticals, the VE identified several jobs that an individual with plaintiff's limitations was capable of performing, but only if that individual could read.  A finding that plaintiff was illiterate, then, would undercut the ALJ's conclusion that there were a significant number of jobs in the national economy that plaintiff could perform.

At the same time, it is certainly not evident that plaintiff is illiterate.  In particular, his testimony at the first hearing about being able to read at a third grade level, and that one of his friends was "trying to teach [plaintiff] how to read" (T. 46), suggests that he does have some ability to read.  Given how minimal the standards are for literacy under the regulations, I find that the appropriate remedy here is to remand the case for further development of the record. *See Wolfe*, 86 F.3d at 1077 (remanding for further findings of fact on whether plaintiff was illiterate); *Diehl*, 357 F.Supp.2d at 824 ("on remand the ALJ should have Plaintiff's reading ability tested"); *Stevens v. Barnhart*, No. 02-CV-7150, 2003 WL 22016922, at *8 (E.D.Pa. June 27, 2003) (where ALJ did not provide adequate explanation for discounting hospital report stating that plaintiff read below third-grade level, nor were ambiguities in the record satisfactorily clarified as to whether plaintiff was illiterate, proper remedy was to have plaintiff's reading ability tested); *Cole*, 2000 WL 290432, at *5 (remanding for hearing on the issue of literacy where "the ALJ summarily determined that Cole had a limited education and therefore was not illiterate"); *Rhodes v. Secretary of H.H.S.*, No. 89-71920, 1994 WL 750633 (E.D.Mich. Oct. 12, 1994) (upholding ALJ's finding that plaintiff was literate, following earlier remand by

court for further development of the record on that issue); *Eason v. Secretary of Dep't of H.H.S.*, No. CV-85-0504, 1987 WL 8091, at *2 (E.D.N.Y. Feb. 25, 1987) (remanding for further proceedings on issue of plaintiff's literacy).

## CONCLUSION

Plaintiff's motion for judgment on the pleadings (Dkt. #10) is granted and the Commissioner's motion (Dkt. # 9) is denied.  The final decision of the Commissioner is reversed.  The case is remanded for further administrative proceedings consistent with this Decision and Order, pursuant to the fourth sentence of 42 U.S.C. § 405(g).

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       February 8, 2007